1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10    THOMAS J. TUTTLE,                              CASE NO. C11-1048-RSM

11                    Plaintiff,                     ORDER DISMISSING
                                                     PLAINTIFF'S COMPLAINT
12            v.

13    THE BANK OF NEW YORK MELLON,
      as trustee for CIT Home Equity Loan
14    Trust 2002-2, NORTHWEST TRUSTEE
      SERVICES, INC., and VERICREST
15    FINANCIAL, INC. ,

16                    Defendants.

17

18                              **I. INTRODUCTION**

19            This matter comes before the Court upon Defendants' motion to dismiss (Dkt. Nos. 14 &

20    15).  Plaintiff alleges several causes of action against the Bank of New York Mellon ("BONY"),

21    Northwest Trustee Services, Inc. ("NWT") and Vericrest Financial, Inc., ("Vericrest") related to

22    the nonjudicial foreclosure of his home.  For the reasons set forth below, Defendants' motion to

23    dismiss Plaintiff's amended complaint is GRANTED.

24

# II. DISCUSSION

## A. Background

On January 10, 2002, Mr. and Mrs. Tuttle executed a promissory note secured by a deed of trust, for the sum of $215,525 in favor of non-party CIT Group/Consumer Finance, Inc.  An Assignment of Deed of Trust was executed in favor of Defendant BONY on November 11, 2010 and NWTS was appointed as successor trustee on September 8, 2010.  Dkt. No. 17, Exs. B & D.

In September, 2010, the Tuttles received a Notice of Default from NWTS alleging that they were in default for failing to make payments as required by the note and deed of trust.  The Notice of Default indicated that the Tuttles owed $12,897.58 in arrears and costs, beginning with the 4/18/2010 installment.  The beneficiary of the deed of trust was listed as Defendant BONY, as Trustee for CIT Home Equity Loan Trust 2002-2, by Vericrest, as attorney in fact.  Vericrest was listed as the loan servicer.

On or about October 25, 2010, the Tuttles sent Vericrest a letter entitled "Qualified Written Request", in which the Tuttles requested information related to the servicing of their loan.  Dkt. No. 1, p. 7.  Vericrest responded on October 29, 2010 by providing a number of documents related to the Tuttles' home loan.  Dkt. No. 1, Ex. D.  On December 2, 2010, NWTS recorded a Notice of Trustee's Sale.  Dkt. No. 1, Ex. G.  The trustee's sale was originally scheduled for March 4, 2011, but was postponed twice.  *Id.*

On June 24, 2011, Plaintiff commenced this lawsuit alleging several causes of action under federal statutes, the Washington Deed of Trust Act ("DTA"), and state common law and seeking to enjoin the nonjudicial trustee's sale of his home.  The Court construed portions of Plaintiff's complaint as a motion for a temporary injunction of the trustee's sale of his home, scheduled to occur that same day.  So construed, the motion was denied for failing to comply

with provisions of the DTA regarding actions to enjoin trustees sale. *See* Dkt. No. 3.  On July 5, 2011, NWTS sold Plaintiff's property.  The Court granted Plaintiff leave to amend his complaint and Defendants moved to dismiss Plaintiff's amended complaint.

**B. Analysis**

    1.  <u>Standard</u>

       In considering a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has alleged sufficient facts to state a claim for relief which is "plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if the plaintiff has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. 556).  In making this assessment, the Court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party.  *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted).  The Court is not, however, bound to accept the plaintiff's legal conclusions.  *Iqbal*, 129 S. Ct. at 1949-50.  While detailed factual allegations are not necessary, the plaintiff must provide more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

       Normally, in reviewing the complaint under this standard, a court may look only at the face of the complaint to decide the motion. *Van Buskirk v. Cable News Network, Inc*., 284 F.3d 977, 980 (9th Cir. 2002).  However, if the plaintiff physically attaches documents as part of his complaint, the court may consider those documents with the complaint on a motion to dismiss without converting the motion into a motion for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir.2001).  Further, a court may also consider documents offered by

1  defendants that were originally referenced in Plaintiff's complaint.  *United States v. Ritchie*, 342

2  F.3d 903, 907-08 (9th Cir. 2003).

3       2.   Real Estate Settlement Procedures Act ("RESPA") Claim

4       Plaintiff alleges that Defendants are liable under RESPA because "Plaintiff sent a

5  Qualified Written Request ['QWR'] to Defendant's purported loan servicer and to date Plaintiff

6  has never received any response and/or received an inadequate response that failed to comply

7  with 12 U.S.C. § 2605(e)."  Dkt. No. 17, ¶ 21.  Plaintiff fails to state a claim for which relief can

8  be granted.

9       First, Plaintiff is judicially stopped from claiming that he did not receive any response to

10  his QWR because he attached two responses from Vericrest to his original complaint.  Dkt. No.

11  1, Ex. D.  *Cf. Zedner v. U.S.*, 547 U.S. 489, 504, 126 S.Ct. 1976, 1987 (U.S. 2006) (explaining

12  judicial estoppel).  Second, to the extent that Plaintiff's claim is predicated on the inadequacy of

13  Vericrest's response, Plaintiff does not explain how or why Vericrest's response to the QWR

14  failed to comply with the statute.  The Court is not bound to accept the plaintiff's legal

15  conclusions.  *Iqbal*, 129 S. Ct. at 1949-50.  Third, the sole relief available under RESPA is for

16  "actual damages to the borrower as a result of the failure [to comply with RESPA]" and

17  "additional damages," as determined by the Court.  12 U.S.C. § (f)(1)(A).  RESPA does not

18  contemplate an action in which Plaintiff has not suffered any damages at all.  *See Allen v. United*

19  *Financial Mortg. Corp.*, 660 F.Supp.2d 1089, 1097 (N.D.Cal. 2009) (collecting cases).  Here,

20  Plaintiff has failed to allege damages resulting from Defendants' alleged failure to comply with

21  requirements under RESPA.  Plaintiff's RESPA claim is dismissed.

22       3.   Fair Credit Reporting Act ("FCRA") Claim

23       Congress enacted the FCRA "to ensure fair and accurate credit reporting, promote

24  efficiency in the banking system, and protect consumer privacy."  *Gormon v. Wolpoff &*

1   *Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551

2   U.S. 47 (2007)).  A private right of action under the FCRA exists only for claims arising under §

3   1681s-2(b).  *See* § 1681s-2(c); *Gormon*, 584 F.3d at 1154 (citing *Nelson v. Chase Manhattan*

4   *Mortgage Corp.*, 282 F.3d 1057, 1059 (9th Cir. 2002)).  Section 1681s-2(b) imposes duties on

5   furnishers of information *after* the furnisher receives notice of dispute from a Credit Reporting

6   Agency.[1]

7          Here, Plaintiff alleges that Defendants violated the FCRA "by permitting or requesting

8   erroneously reporting the alleged debt/obligation on the Plaintiff's credit report."  Dkt. No. 17, ¶

9   23.  Plaintiff states that he "properly disputed this alleged debt to credit reporting companies"

10  and "[t]o date. . . has received no validation of the debt but the matter remains on the Plaintiff's

11

12

---

13  [1] After receiving notice . . . of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--

14

15          **(A)** conduct an investigation with respect to the disputed information;

16          **(B)** review all relevant information provided by the consumer reporting agency … ;

17          **(C)** report the results of the investigation to the consumer reporting agency;

18          **(D)** if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

19          **(E)** if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--

20

21          **(i)** modify that item of information;

22          **(ii)** delete that item of information; or

23          **(iii)** permanently block the reporting of that item of information.

24  15 U.S.C. § 1681s-2(b).

PLAINTIFF'S COMPLAINT - 5

credit report." *Id.*  Plaintiff's allegations do not state a claim for which relief can be granted as Plaintiff's allegations do not constitute violations of the FCRA.

The FCRA provides that a furnisher's duties under the statute are triggered only upon receiving notice of a dispute from a credit reporting agency.  15 U.S.C. § 1681s-2(b); *Gormon,* 584 F.3d at 1154.  Plaintiff has not alleged any facts to support the conclusion that Defendants received a notice of a dispute from any credit reporting agency, which could trigger Defendants' duty to investigate.  It would be impermissible for the court to infer that Defendants received such a notice based solely on Plaintiff's assertion that he disputed the debt to credit reporting agencies.  "[A] consumer reporting agency may terminate a reinvestigation of information disputed by a consumer . . . if the agency reasonably determines that the dispute by the consumer is frivolous or irrelevant, including by reason of a failure by a consumer to provide sufficient information to investigate the disputed information."  15 U.S.C. § 1681i(a)(3).  Therefore, the Court cannot know whether the credit reporting agency, upon receiving Plaintiff's complaint, determined that Plaintiff had failed to provide sufficient information to investigate the disputed information, or that Plaintiff's dispute was frivolous, and terminated the reinvestigation, or whether it conducted the reinvestigation and alerted the furnishers of the dispute.  Finally, even if Defendants were alerted to Plaintiff's dispute, Plaintiff has failed to allege that Defendants failed to investigate or to alert the credit reporting agency of the results of its investigation.  Plaintiff's fails to state a claim for which relief can be granted under the FCRA and his FCRA claim is hereby dismissed.

4.   <u>Fair Debt Collection Practices Act ("FDCPA") Claim</u>

"It is well-settled that provisions of the FDCPA generally apply only to debt collectors." *Scott v. Wells Fargo Home Mortgage, Inc*., 326 F.Supp.2d 709, 710, 717 (E.D.Va. 2003) *citing Pollice v. National Tax Funding, L.P*. 225 F.3d 379 (3d Cir.2000).  The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce of the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly debts owed or due or asserted to be owed or due another." 15. U.S.C. § 1692(a)(6).  Several district courts have concluded that foreclosing on a deed of trust is not "debt collection" under the FDCPA.  *See, e.g., Mansour v. Cal-Western Reconveyance Corp*., 618 F.Supp.2d 1178, 1182 (D.Ariz. 2009) (holding that non-judicial foreclosure proceedings do not constitute debt collection for purposes of the FDCPA);  *Hulse v. Ocwen Federal Bank, FSB*, 195 F.Supp.2d 1188, 1204 (D.Or. 2002).  *See also Diessner v. Mortg. Electronic Systems*, 618 F.Supp.2d 1184, 188-89 (D. Ariz. 2009) ("The legislative history of the FDCPA supports the position that mortgagees and their assignees, including mortgage servicing companies, are not debt collectors under the FDCPA when the debts were not in default when taken for servicing." (citing S. Rep. No. 95-382, 3-4 (1977), U.S. Code Cong. & Admin. News 1977, p. 1695, 1698).  An exception to this rule may exist where a debt on a promissory note is in default when the assignee or servicing company takes the loan for servicing.  *Id.*

Here, Plaintiff fails to identify which Defendants failed to comply with which provisions of the FDCPA.  There is some question as to whether BONY became the beneficiary of the deed

1  of trust before or after Plaintiff defaulted on his loan.[2]  Even if the FDCPA were applicable to

2  this litigation, Plaintiff has failed to identify any actions taken by BONY or any of the other

3  Defendants that would constitute violations of the FDCPA.  Plaintiff alleges that he "disputed the

4  alleged debt and requested verification of the debt from all claimants who identified themselves

5  as debt collectors however Plaintiff has received no verification."  Dkt. No. 17, ¶ 22.  He also

6  claims that "[s]ome of the Defendants failed to offer to validate the debt, never sent a dunning

7  letter, and took non-judicial action to collect the unsecured alleged debt all which violated the

8  FDCPA."  Without more, the Court cannot ascertain, and Defendants are not given fair notice of,

9  the nature of Plaintiff's claim.

10         Indeed, the statement that Plaintiff did not receive "verification" of his debt fails to state a

11  plausible claim in light of the letter from Defendant Vericrest that Plaintiff attaches to his

12  original complaint.  *See* Dkt. No. 1, Ex. D.  The letter from Vericrest is a response to Plaintiff's

13  QWR, verifying the amount of Plaintiff's debt, and providing copies of the following documents:

14         1. Uniform Residential Loan Application
       2. Adjustable Rate Promissory Note
15         3. HUD-1 Settlement Statement
       4. Notice of Right to Cancel
16         5. Compliance Agreement
       6. Disclosure Statement for Adjustable Rate Mortgage Loan
17         7. Good Faith Estimate of Settlement Charges
       8. Deed of Trust
18         9. Federal Truth in Lending Statement
       10. Adjustable Rate Rider
19         11. Title Policy
       12. Uniform Residential Appraisal Report
20         13. Payment History

21  Dkt. No. 1, Ex. D.

22  _____

23  [2] The Notice of Default indicates that Plaintiff stopped on his loan on March 18, 2010.  Dkt. No. 17, Ex. E.
   However, the Assignment of the Deed of Trust from CIT Group/Consumer Finance, Inc. to BONY is dated
   November 11, 2010.  Dkt. No. 17, Ex. D.  The Appointment of Defendant NWT as successor trustee is dated
24  September 8, 2010.

1    The allegation that Defendants took non-judicial action to foreclose on an *unsecured* debt

2    is also undermined by (1) the deed of trust attached to Plaintiff's complaint (Dkt. No. 17, Ex. B),

3    signed by Plaintiff, securing to the lender, *with power of sale*, the payment of debt evidenced by

4    the promissory note; (2) the assignment of all beneficial interest in the deed of trust to Defendant

5    BONY (Dkt. No. 17, Ex. D); and (3) the adjustable rate promissory note, signed by Plaintiff,

6    promising to pay the lender $215,525, and indicating that "the loan is secured by a Deed of Trust

7    on the real property" (Dkt. No. 14, Ex. A).  Plaintiff's FCRA claim is not plausible on its face

8    and is hereby dismissed.

9        5.  <u>Washington Deed of Trust Act ("DTA") Claims</u>

10       Plaintiff brings claims for "False Claim – failed endorsement(s)"; "Erroneous Alleged

11   Default;" "Material Violations – Washington Deed of Trust Act," and "Injunctive Relief."   The

12   Court construes each of these claims as claims under the Washington DTA.  In these claims,

13   Plaintiff disputes whether BONY is the true beneficiary to the deed of trust, arguing that the

14   Note lists a different entity as the original lender and that there is no endorsement evidencing a

15   transfer to BONY.  *See* Dkt. No. 17, ¶¶ 27-29.  Plaintiff admits that he signed the promissory

16   note referenced in the operative deed of trust and does not allege that he fulfilled his loan

17   obligations or that he was not in default.  *See* Dkt. No. 17, ¶11.  Rather, he disputes whether "the

18   Note relied upon by Defendant(s) is the same Note referenced in the said Deed of Trust," *id.* at ¶

19   13, and whether BONY is the true beneficiary.

20       These arguments are variants of the "show me the note" argument that has been routinely

21   rejected by courts in this district and others.  *See, e.g., Mikhay v. Bank of Am., NA.*, 2011 WL

22   167064, *2–*3 (W.D.Wash. 2011); *Wright v. Accredited Home Lenders*, 2011 WL 39027

23   (W.D.Wash. 2011); *Pelzel v. First Saving Bank Northwest*, 2010 WL 3814285, at *2

24   (W.D.Wash. 2010); *Wallis v. IndyMac Fed. Bank*, 717 F.Supp.2d 1195, 1200 (W.D.Wash.

1   2010); *Freeston v. Bishop, White & Marshall, P.S.*, 2010 WL 1186276, at *6 (W.D.Wash. 2010).

2   *See also Deissner*, 618 F. Supp. 2d at 1187 (collecting cases).  Plaintiff challenges Defendants'

3   failure to produce an original copy of the promissory note or otherwise demonstrate that BONY

4   is the "holder," of the note.  *See* RCW 62A.1-201 (defining "holders" as the "person in

5   possession of the instrument").  However, Plaintiff does not allege facts that would give rise to

6   an inference that BONY is *not* the holder, or explain how the lack of endorsement or BONY's

7   failure to produce the original note gives rise to a cause of action for which Plaintiff is entitled to

8   relief.  Indeed, the Washington DTA requires that a foreclosing lender demonstrate its ownership

9   of the underlying note to the trustee, not the borrower. RCW 61.24.030(7).

10       Plaintiff also alleges that NWT was appointed as successor trustee by BONY before

11   BONY was assigned the deed of trust.  Dkt. No. 17, ¶ 29.  Plaintiff, however, does not

12   challenge NWT's authority to record the Notice of Trustee's Sale or execute and deliver the

13   Trustee's Deed to Bony.  Nor does Plaintiff allege that he suffered prejudice or damages as a

14   result of the alleged impropriety.

15       Finally, the DTA provides a procedure by which any enumerated entity may restrain a

16   trustee's sale on any proper ground. *Brown v. Household Realty Corp.*, 146 Wash.App. 157, 163,

17   189 P.3d 233 (2008). This statutory procedure is the only means by which a grantor may

18   preclude a sale once foreclosure has begun with receipt of the notice of sale and foreclosure. *Id.*

19   A borrower's failure to take advantage of the pre-sale remedies under the Deed of Trust Act

20   results in waiver of their right to object to the trustee's sale where the party (1) received notice of

21   the right to enjoin the sale, (2) had actual or constructive knowledge of a defense to foreclosure

22   prior to the sale, and (3) failed to bring an action to obtain a court order enjoining the sale.

23

24

PLAINTIFF'S COMPLAINT - 10

1   *Brown*, at 163, 189 P.3d 233. *See also Plein v. Lackey*, 149 Wash.2d 214, 227–229, 67 P.3d 1061

2   (2003).

3          The Court previously found that Plaintiff had not complied with the DTA's requirements

4   for enjoining a trustee's sale.  *See* Dkt. No. 3.   Plaintiff does not allege that he did not receive

5   the Notice of Default and the Notice of Trustee's Sale, or that those Notices failed to advise him

6   of his right to enjoin the sale.  Accordingly, Plaintiff's cause of action for injunctive relief is

7   subject to dismissal pursuant to the waiver provisions of the DTA.  Further, because Plaintiff no

8   longer has a right to possession of the property, the Court cannot provide effective relief for this

9   claim, rendering it moot. *See Rosal v. First Fed. Bank of Cal.*, 671 F.Supp.2d 1111, 1136

10   (N.D.Cal. 2009) (claims for injunctive relief moot where trustee's sale already occurred).

11          The DTA was recently amended to permit claims for *money* damages after a foreclosure

12   sale based upon (1) fraud or misrepresentation, (2) claims under RCW 19, (3) the failure *of the*

13   *trustee* to "materially comply" with the provisions of the Act; and (4) a violation of RCW

14   61.24.026.  *See*  RCW 61.24.127.  Plaintiff does not bring an action for fraud or

15   misrepresentation, violations under RCW 19 or 61.24.026 and has failed to allege that Defendant

16   NWTS, the trustee, failed to comply with the DTA.

17          Accordingly, Plaintiff's allegations surrounding BONY's status as beneficiary and ability

18   to appoint NWT as successor trustee fail to state a claim for which relief can be granted and are

19   hereby dismissed.

20      6.  <u>Internal Revenue Code ("IRC") Claims</u>

21          Plaintiff's allegations surrounding Defendants' purported failure to make the proper

22   elections under Section 856 of the IRC (28 USC § 856) fail to state a claim for which relief may

23   be granted.  Plaintiff has not identified any provision of the IRC under which Plaintiff may bring

24   a private cause of action or otherwise obtain standing to require that Defendants make the proper

1  election or comply with provisions of the IRC.  Defendants' motion to dismiss Plaintiff's IRC

2  claim is GRANTED.

3      7.  <u>Other Claims</u>

4          Plaintiff does not allege any contractual duty owed by Defendants such that a breach

5  could have occurred.  Plaintiff's breach of contract claim is dismissed.

6          Plaintiff's failure to oppose Defendants' motion to dismiss Plaintiff's claim for "equitable

7  estoppel" is construed by court as an admission that Defendant's motion has merit.  *See* Local

8  Rule CR 7(b)(2).  Plaintiff's claim for "equitable estoppel" is dismissed.

9          To succeed on a slander-of-title claim, a plaintiff must show (1) false words; (2)

10 maliciously published; (3) referencing a pending sale or purchase of property; (4) which go to

11 defeat plaintiff's title; and (5) result in pecuniary loss to plaintiff. *Rorvig v. Douglas,* 123

12 Wash.2d 854, 859–60, 873 P.2d 492 (1994).  Here, Plaintiff has not alleged that Defendants

13 maliciously recorded the Notice of Trustee's Sale.  Indeed, Washington law requires a trustee to

14 record such a notice following a borrower's default.  *See* RCW 61.24.030.  Plaintiff does not

15 allege that he is not in default.  The Complaint therefore lacks sufficient facts to maintain a claim

16 for slander of title and the claim is hereby dismissed.

17         Negligence requires (1) a duty owed by the defendant to the plaintiff; (2) breach of that

18 duty; (3) causation; and (4) injury.  *Ruff v. County of King,* 125 Wn.2d 697, 704, 887 P.2d 886

19 (1995).  Plaintiff does not allege that Defendants owed him a duty or breached that duty in a

20 manner that caused him injury.  Plaintiff's negligence claim is likewise dismissed.

21     8.  <u>Amendment Would Be Futile.</u>

22         Leave to amend shall be freely given when justice so requires. Fed.R.Civ.P. 15(a). "If the

23 underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he

24 ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S.

178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Where a defendant moves to dismiss under Fed. R. Civ. P. 12(b)(6), "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). However, where the facts are not in dispute, and the sole issue is whether there is liability as a matter of substantive law, the court may deny leave to amend. *See Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).  The essential facts are not in dispute in this case.  Thus, the Court denies leave to amend.

## III. CONCLUSION

Having carefully reviewed Plaintiff's Amended Verified Complaint, the Motion to Dismiss submitted by Defendants BONY and Vericrest, Defendant NWT's Joinder in the Motion to Dismiss, Plaintiff's Response in Opposition to the Motion to Dismiss and Joinder, the Reply in Support of the Motion to Dismiss, and the remainder of the record, the Court hereby finds and ORDERS:

(1)  Defendants' Motion to Dismiss (Dkt. Nos. 14 & 15) is GRANTED.

(2) This action is hereby dismissed with prejudice.

(3) The Clerk of the Court is directed to forward a copy of this Order to Plaintiff and to all counsel of record.

Dated March 6, 2012.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE