UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THOMAS J. TUTTLE, | CASE NO. C11-1048-RSM |
| Plaintiff, | ORDER DISMISSING PLAINTIFF'S COMPLAINT |
| v. | |
| THE BANK OF NEW YORK MELLON, as trustee for CIT Home Equity Loan Trust 2002-2, NORTHWEST TRUSTEE SERVICES, INC., and VERICREST FINANCIAL, INC., | |
| Defendants. | |

## I. INTRODUCTION

This matter comes before the Court upon Defendants' motion to dismiss (Dkt. Nos. 14 & 15). Plaintiff alleges several causes of action against the Bank of New York Mellon ("BONY"), Northwest Trustee Services, Inc. ("NWT") and Vericrest Financial, Inc., ("Vericrest") related to the nonjudicial foreclosure of his home. For the reasons set forth below, Defendants' motion to dismiss Plaintiff's amended complaint is GRANTED.

## II. DISCUSSION

**A. Background**

On January 10, 2002, Mr. and Mrs. Tuttle executed a promissory note secured by a deed of trust, for the sum of $215,525 in favor of non-party CIT Group/Consumer Finance, Inc. An Assignment of Deed of Trust was executed in favor of Defendant BONY on November 11, 2010 and NWTS was appointed as successor trustee on September 8, 2010. Dkt. No. 17, Exs. B & D.

In September, 2010, the Tuttles received a Notice of Default from NWTS alleging that they were in default for failing to make payments as required by the note and deed of trust. The Notice of Default indicated that the Tuttles owed $12,897.58 in arrears and costs, beginning with the 4/18/2010 installment. The beneficiary of the deed of trust was listed as Defendant BONY, as Trustee for CIT Home Equity Loan Trust 2002-2, by Vericrest, as attorney in fact. Vericrest was listed as the loan servicer.

On or about October 25, 2010, the Tuttles sent Vericrest a letter entitled "Qualified Written Request", in which the Tuttles requested information related to the servicing of their loan. Dkt. No. 1, p. 7. Vericrest responded on October 29, 2010 by providing a number of documents related to the Tuttles' home loan. Dkt. No. 1, Ex. D. On December 2, 2010, NWTS recorded a Notice of Trustee's Sale. Dkt. No. 1, Ex. G. The trustee's sale was originally scheduled for March 4, 2011, but was postponed twice. *Id.*

On June 24, 2011, Plaintiff commenced this lawsuit alleging several causes of action under federal statutes, the Washington Deed of Trust Act ("DTA"), and state common law and seeking to enjoin the nonjudicial trustee's sale of his home. The Court construed portions of Plaintiff's complaint as a motion for a temporary injunction of the trustee's sale of his home, scheduled to occur that same day. So construed, the motion was denied for failing to comply

with provisions of the DTA regarding actions to enjoin trustees sale. *See* Dkt. No. 3. On July 5, 2011, NWTS sold Plaintiff's property. The Court granted Plaintiff leave to amend his complaint and Defendants moved to dismiss Plaintiff's amended complaint.

**B. Analysis**

    1. <u>Standard</u>

In considering a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has alleged sufficient facts to state a claim for relief which is "plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the plaintiff has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. 556). In making this assessment, the Court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted). The Court is not, however, bound to accept the plaintiff's legal conclusions. *Iqbal*, 129 S. Ct. at 1949-50. While detailed factual allegations are not necessary, the plaintiff must provide more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

    Normally, in reviewing the complaint under this standard, a court may look only at the face of the complaint to decide the motion. *Van Buskirk v. Cable News Network, Inc*., 284 F.3d 977, 980 (9th Cir. 2002). However, if the plaintiff physically attaches documents as part of his complaint, the court may consider those documents with the complaint on a motion to dismiss without converting the motion into a motion for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir.2001). Further, a court may also consider documents offered by

defendants that were originally referenced in Plaintiff's complaint. *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).

2. Real Estate Settlement Procedures Act ("RESPA") Claim

Plaintiff alleges that Defendants are liable under RESPA because "Plaintiff sent a Qualified Written Request ['QWR'] to Defendant's purported loan servicer and to date Plaintiff has never received any response and/or received an inadequate response that failed to comply with 12 U.S.C. § 2605(e)." Dkt. No. 17, ¶ 21. Plaintiff fails to state a claim for which relief can be granted.

First, Plaintiff is judicially stopped from claiming that he did not receive any response to his QWR because he attached two responses from Vericrest to his original complaint. Dkt. No. 1, Ex. D. *Cf. Zedner v. U.S.*, 547 U.S. 489, 504, 126 S.Ct. 1976, 1987 (U.S. 2006) (explaining judicial estoppel). Second, to the extent that Plaintiff's claim is predicated on the inadequacy of Vericrest's response, Plaintiff does not explain how or why Vericrest's response to the QWR failed to comply with the statute. The Court is not bound to accept the plaintiff's legal conclusions. *Iqbal*, 129 S. Ct. at 1949-50. Third, the sole relief available under RESPA is for "actual damages to the borrower as a result of the failure [to comply with RESPA]" and "additional damages," as determined by the Court. 12 U.S.C. § (f)(1)(A). RESPA does not contemplate an action in which Plaintiff has not suffered any damages at all. *See Allen v. United Financial Mortg. Corp.*, 660 F.Supp.2d 1089, 1097 (N.D.Cal. 2009) (collecting cases). Here, Plaintiff has failed to allege damages resulting from Defendants' alleged failure to comply with requirements under RESPA. Plaintiff's RESPA claim is dismissed.

3. Fair Credit Reporting Act ("FCRA") Claim

Congress enacted the FCRA "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Gormon v. Wolpoff &*

*Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007)). A private right of action under the FCRA exists only for claims arising under § 1681s-2(b). *See* § 1681s-2(c); *Gormon,* 584 F.3d at 1154 (citing *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059 (9th Cir. 2002)). Section 1681s-2(b) imposes duties on furnishers of information *after* the furnisher receives notice of dispute from a Credit Reporting Agency.[1]

Here, Plaintiff alleges that Defendants violated the FCRA "by permitting or requesting erroneously reporting the alleged debt/obligation on the Plaintiff's credit report." Dkt. No. 17, ¶ 23. Plaintiff states that he "properly disputed this alleged debt to credit reporting companies" and "[t]o date. . . has received no validation of the debt but the matter remains on the Plaintiff's

---

[1] After receiving notice . . . of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--

    **(A)** conduct an investigation with respect to the disputed information;

    **(B)** review all relevant information provided by the consumer reporting agency … ;

    **(C)** report the results of the investigation to the consumer reporting agency;

    **(D)** if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

    **(E)** if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--

    **(i)** modify that item of information;

    **(ii)** delete that item of information; or

    **(iii)** permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b).

credit report." *Id.* Plaintiff's allegations do not state a claim for which relief can be granted as Plaintiff's allegations do not constitute violations of the FCRA.

The FCRA provides that a furnisher's duties under the statute are triggered only upon receiving notice of a dispute from a credit reporting agency. 15 U.S.C. § 1681s-2(b); *Gormon,* 584 F.3d at 1154. Plaintiff has not alleged any facts to support the conclusion that Defendants received a notice of a dispute from any credit reporting agency, which could trigger Defendants' duty to investigate. It would be impermissible for the court to infer that Defendants received such a notice based solely on Plaintiff's assertion that he disputed the debt to credit reporting agencies. "[A] consumer reporting agency may terminate a reinvestigation of information disputed by a consumer . . . if the agency reasonably determines that the dispute by the consumer is frivolous or irrelevant, including by reason of a failure by a consumer to provide sufficient information to investigate the disputed information." 15 U.S.C. § 1681i(a)(3). Therefore, the Court cannot know whether the credit reporting agency, upon receiving Plaintiff's complaint, determined that Plaintiff had failed to provide sufficient information to investigate the disputed information, or that Plaintiff's dispute was frivolous, and terminated the reinvestigation, or whether it conducted the reinvestigation and alerted the furnishers of the dispute. Finally, even if Defendants were alerted to Plaintiff's dispute, Plaintiff has failed to allege that Defendants failed to investigate or to alert the credit reporting agency of the results of its investigation. Plaintiff's fails to state a claim for which relief can be granted under the FCRA and his FCRA claim is hereby dismissed.

4. Fair Debt Collection Practices Act ("FDCPA") Claim

"It is well-settled that provisions of the FDCPA generally apply only to debt collectors." *Scott v. Wells Fargo Home Mortgage, Inc.*, 326 F.Supp.2d 709, 710, 717 (E.D.Va. 2003) *citing Pollice v. National Tax Funding, L.P.* 225 F.3d 379 (3d Cir.2000). The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce of the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly debts owed or due or asserted to be owed or due another." 15. U.S.C. § 1692(a)(6). Several district courts have concluded that foreclosing on a deed of trust is not "debt collection" under the FDCPA. *See, e.g., Mansour v. Cal-Western Reconveyance Corp.*, 618 F.Supp.2d 1178, 1182 (D.Ariz. 2009) (holding that non-judicial foreclosure proceedings do not constitute debt collection for purposes of the FDCPA); *Hulse v. Ocwen Federal Bank, FSB*, 195 F.Supp.2d 1188, 1204 (D.Or. 2002). *See also Diessner v. Mortg. Electronic Systems*, 618 F.Supp.2d 1184, 188-89 (D. Ariz. 2009) ("The legislative history of the FDCPA supports the position that mortgagees and their assignees, including mortgage servicing companies, are not debt collectors under the FDCPA when the debts were not in default when taken for servicing." (citing S. Rep. No. 95-382, 3-4 (1977), U.S. Code Cong. & Admin. News 1977, p. 1695, 1698). An exception to this rule may exist where a debt on a promissory note is in default when the assignee or servicing company takes the loan for servicing. *Id.*

Here, Plaintiff fails to identify which Defendants failed to comply with which provisions of the FDCPA. There is some question as to whether BONY became the beneficiary of the deed

of trust before or after Plaintiff defaulted on his loan.[2] Even if the FDCPA were applicable to this litigation, Plaintiff has failed to identify any actions taken by BONY or any of the other Defendants that would constitute violations of the FDCPA. Plaintiff alleges that he "disputed the alleged debt and requested verification of the debt from all claimants who identified themselves as debt collectors however Plaintiff has received no verification." Dkt. No. 17, ¶ 22. He also claims that "[s]ome of the Defendants failed to offer to validate the debt, never sent a dunning letter, and took non-judicial action to collect the unsecured alleged debt all which violated the FDCPA." Without more, the Court cannot ascertain, and Defendants are not given fair notice of, the nature of Plaintiff's claim.

Indeed, the statement that Plaintiff did not receive "verification" of his debt fails to state a plausible claim in light of the letter from Defendant Vericrest that Plaintiff attaches to his original complaint. *See* Dkt. No. 1, Ex. D. The letter from Vericrest is a response to Plaintiff's QWR, verifying the amount of Plaintiff's debt, and providing copies of the following documents:

1. Uniform Residential Loan Application
2. Adjustable Rate Promissory Note
3. HUD-1Settlement Statement
4. Notice of Right to Cancel
5. Compliance Agreement
6. Disclosure Statement for Adjustable Rate Mortgage Loan
7. Good Faith Estimate of Settlement Charges
8. Deed of Trust
9. Federal Truth in Lending Statement
10. Adjustable Rate Rider
11. Title Policy
12. Uniform Residential Appraisal Report
13. Payment History

Dkt. No. 1, Ex. D.

---

[2] The Notice of Default indicates that Plaintiff stopped on his loan on March 18, 2010. Dkt. No. 17, Ex. E. However, the Assignment of the Deed of Trust from CIT Group/Consumer Finance, Inc. to BONY is dated November 11, 2010. Dkt. No. 17, Ex. D. The Appointment of Defendant NWT as successor trustee is dated September 8, 2010.

The allegation that Defendants took non-judicial action to foreclose on an *unsecured* debt is also undermined by (1) the deed of trust attached to Plaintiff's complaint (Dkt. No. 17, Ex. B), signed by Plaintiff, securing to the lender, *with power of sale*, the payment of debt evidenced by the promissory note; (2) the assignment of all beneficial interest in the deed of trust to Defendant BONY (Dkt. No. 17, Ex. D); and (3) the adjustable rate promissory note, signed by Plaintiff, promising to pay the lender $215,525, and indicating that "the loan is secured by a Deed of Trust on the real property" (Dkt. No. 14, Ex. A). Plaintiff's FCRA claim is not plausible on its face and is hereby dismissed.

5. Washington Deed of Trust Act ("DTA") Claims

Plaintiff brings claims for "False Claim – failed endorsement(s)"; "Erroneous Alleged Default;" "Material Violations – Washington Deed of Trust Act," and "Injunctive Relief." The Court construes each of these claims as claims under the Washington DTA. In these claims, Plaintiff disputes whether BONY is the true beneficiary to the deed of trust, arguing that the Note lists a different entity as the original lender and that there is no endorsement evidencing a transfer to BONY. *See* Dkt. No. 17, ¶¶ 27-29. Plaintiff admits that he signed the promissory note referenced in the operative deed of trust and does not allege that he fulfilled his loan obligations or that he was not in default. *See* Dkt. No. 17, ¶11. Rather, he disputes whether "the Note relied upon by Defendant(s) is the same Note referenced in the said Deed of Trust," *id.* at ¶ 13, and whether BONY is the true beneficiary.

These arguments are variants of the "show me the note" argument that has been routinely rejected by courts in this district and others. *See, e.g., Mikhay v. Bank of Am., NA.*, 2011 WL 167064, *2–*3 (W.D.Wash. 2011); *Wright v. Accredited Home Lenders*, 2011 WL 39027 (W.D.Wash. 2011); *Pelzel v. First Saving Bank Northwest*, 2010 WL 3814285, at *2 (W.D.Wash. 2010); *Wallis v. IndyMac Fed. Bank*, 717 F.Supp.2d 1195, 1200 (W.D.Wash.

2010); *Freeston v. Bishop, White & Marshall, P.S.*, 2010 WL 1186276, at *6 (W.D.Wash. 2010). *See also Deissner*, 618 F. Supp. 2d at 1187 (collecting cases). Plaintiff challenges Defendants' failure to produce an original copy of the promissory note or otherwise demonstrate that BONY is the "holder," of the note. *See* RCW 62A.1-201 (defining "holders" as the "person in possession of the instrument"). However, Plaintiff does not allege facts that would give rise to an inference that BONY is *not* the holder, or explain how the lack of endorsement or BONY's failure to produce the original note gives rise to a cause of action for which Plaintiff is entitled to relief. Indeed, the Washington DTA requires that a foreclosing lender demonstrate its ownership of the underlying note to the trustee, not the borrower. RCW 61.24.030(7).

Plaintiff also alleges that NWT was appointed as successor trustee by BONY before BONY was assigned the deed of trust. Dkt. No. 17, ¶ 29. Plaintiff, however, does not challenge NWT's authority to record the Notice of Trustee's Sale or execute and deliver the Trustee's Deed to Bony. Nor does Plaintiff allege that he suffered prejudice or damages as a result of the alleged impropriety.

Finally, the DTA provides a procedure by which any enumerated entity may restrain a trustee's sale on any proper ground. *Brown v. Household Realty Corp.*, 146 Wash.App. 157, 163, 189 P.3d 233 (2008). This statutory procedure is the only means by which a grantor may preclude a sale once foreclosure has begun with receipt of the notice of sale and foreclosure. *Id.* A borrower's failure to take advantage of the pre-sale remedies under the Deed of Trust Act results in waiver of their right to object to the trustee's sale where the party (1) received notice of the right to enjoin the sale, (2) had actual or constructive knowledge of a defense to foreclosure prior to the sale, and (3) failed to bring an action to obtain a court order enjoining the sale.

*Brown*, at 163, 189 P.3d 233. *See also Plein v. Lackey*, 149 Wash.2d 214, 227–229, 67 P.3d 1061 (2003).

The Court previously found that Plaintiff had not complied with the DTA's requirements for enjoining a trustee's sale. *See* Dkt. No. 3. Plaintiff does not allege that he did not receive the Notice of Default and the Notice of Trustee's Sale, or that those Notices failed to advise him of his right to enjoin the sale. Accordingly, Plaintiff's cause of action for injunctive relief is subject to dismissal pursuant to the waiver provisions of the DTA. Further, because Plaintiff no longer has a right to possession of the property, the Court cannot provide effective relief for this claim, rendering it moot. *See Rosal v. First Fed. Bank of Cal.*, 671 F.Supp.2d 1111, 1136 (N.D.Cal. 2009) (claims for injunctive relief moot where trustee's sale already occurred).

The DTA was recently amended to permit claims for *money* damages after a foreclosure sale based upon (1) fraud or misrepresentation, (2) claims under RCW 19, (3) the failure *of the trustee* to "materially comply" with the provisions of the Act; and (4) a violation of RCW 61.24.026. *See* RCW 61.24.127. Plaintiff does not bring an action for fraud or misrepresentation, violations under RCW 19 or 61.24.026 and has failed to allege that Defendant NWTS, the trustee, failed to comply with the DTA.

Accordingly, Plaintiff's allegations surrounding BONY's status as beneficiary and ability to appoint NWT as successor trustee fail to state a claim for which relief can be granted and are hereby dismissed.

6. Internal Revenue Code ("IRC") Claims

Plaintiff's allegations surrounding Defendants' purported failure to make the proper elections under Section 856 of the IRC (28 USC § 856) fail to state a claim for which relief may be granted. Plaintiff has not identified any provision of the IRC under which Plaintiff may bring a private cause of action or otherwise obtain standing to require that Defendants make the proper

election or comply with provisions of the IRC. Defendants' motion to dismiss Plaintiff's IRC claim is GRANTED.

7. Other Claims

Plaintiff does not allege any contractual duty owed by Defendants such that a breach could have occurred. Plaintiff's breach of contract claim is dismissed.

Plaintiff's failure to oppose Defendants' motion to dismiss Plaintiff's claim for "equitable estoppel" is construed by court as an admission that Defendant's motion has merit. *See* Local Rule CR 7(b)(2). Plaintiff's claim for "equitable estoppel" is dismissed.

To succeed on a slander-of-title claim, a plaintiff must show (1) false words; (2) maliciously published; (3) referencing a pending sale or purchase of property; (4) which go to defeat plaintiff's title; and (5) result in pecuniary loss to plaintiff. *Rorvig v. Douglas,* 123 Wash.2d 854, 859–60, 873 P.2d 492 (1994). Here, Plaintiff has not alleged that Defendants maliciously recorded the Notice of Trustee's Sale. Indeed, Washington law requires a trustee to record such a notice following a borrower's default. *See* RCW 61.24.030. Plaintiff does not allege that he is not in default. The Complaint therefore lacks sufficient facts to maintain a claim for slander of title and the claim is hereby dismissed.

Negligence requires (1) a duty owed by the defendant to the plaintiff; (2) breach of that duty; (3) causation; and (4) injury. *Ruff v. County of King,* 125 Wn.2d 697, 704, 887 P.2d 886 (1995). Plaintiff does not allege that Defendants owed him a duty or breached that duty in a manner that caused him injury. Plaintiff's negligence claim is likewise dismissed.

8. Amendment Would Be Futile.

Leave to amend shall be freely given when justice so requires. Fed.R.Civ.P. 15(a). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S.

178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Where a defendant moves to dismiss under Fed. R. Civ. P. 12(b)(6), "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). However, where the facts are not in dispute, and the sole issue is whether there is liability as a matter of substantive law, the court may deny leave to amend. *See Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988). The essential facts are not in dispute in this case. Thus, the Court denies leave to amend.

### III. CONCLUSION

Having carefully reviewed Plaintiff's Amended Verified Complaint, the Motion to Dismiss submitted by Defendants BONY and Vericrest, Defendant NWT's Joinder in the Motion to Dismiss, Plaintiff's Response in Opposition to the Motion to Dismiss and Joinder, the Reply in Support of the Motion to Dismiss, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Defendants' Motion to Dismiss (Dkt. Nos. 14 & 15) is GRANTED.

(2) This action is hereby dismissed with prejudice.

(3) The Clerk of the Court is directed to forward a copy of this Order to Plaintiff and to all counsel of record.

Dated March 6, 2012.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE